

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

---

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

November 9, 2021

**Via ECF**
The Honorable Judge Arlene R. Lindsay
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11201

Re: **Martinez v. Gotta Getta Bagel of Woodmere, Inc., et al.
21-CV-1808 (ARL)**

Dear Judge Lindsay:

Our office represents Valentin Martinez ("Martinez" or "Plaintiff") and we submit this motion jointly with counsel for Gotta Getta Bagel of Woodmere, Inc. and Joel Baruch (collectively, "the Defendants"), requesting the Court's approval of the parties' settlement agreement ("the Settlement Agreement"). The Settlement Agreement, attached hereto as **Exhibit 1**, was achieved at a mediation held on September 9, 2021 through the EDNY Court-annexed mediation program.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiff's counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

I. **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

a. **The Settlement Amount**

The parties agreed to resolve all claims asserted in this action, including requested attorneys' fees, for the amount of $45,000.00 in one payment within 30 days of Court approval of the Settlement Agreement.

### b. Plaintiff's Position

Plaintiff is a former employee of Defendant's bagel store located at 1039 Broadway, Woodmere, New York 11598. Plaintiff brought this action alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiff alleged that, as a former non-exempt food preparer and bagel maker, he was not paid proper overtime rates of pay when he worked in excess of forty (40) hours per week.

Plaintiff alleged that he was employed by Defendants from in or around March 2019 until in or around October 2020. Plaintiff alleged that he was regularly required to work approximately six hours per day and approximately ten (10) to twelve (12) hours per day for a total of approximately sixty-seven (67) hours per week.

However, Plaintiff also alleged that despite regularly working in excess of forty (40) hours per week, he was compensated with a flat weekly salary that ranged from $750.00 to $800.00 per week, depending on the time period of employment. As such, Plaintiff claimed that this flat weekly salary did not properly compensate him for approximately twenty-seven hours of overtime per week. Furthermore, Plaintiff alleged that he was not compensated for an extra hour of pay at the legally prescribed minimum wage for each shift in excess of ten (10) hours in violation of the spread of hours provision contained in the NYLL.

If Plaintiff were 100% successful on all his claims, including: i) establishing the dates of his employment and working every workweek within that period, ii) establishing that he worked sixty-seven (67) hours every week during that period, iii) establishing that he was paid a flat weekly salary for each week of work such that the New York State Hospitality Wage Order would apply to his alleged unpaid overtime claims, and iv) establishing that he was not exempt from overtime compensation as a manager or supervisor, Plaintiff alleged approximately $75,000.00 in unpaid wages.

Despite his alleged damages, Plaintiff recognized the factual disputes as to the actual number of weeks worked during his employment, the number of hours worked per week, whether Plaintiff was compensated by an hourly, daily or weekly rate of pay, and for how much Plaintiff was compensated on a weekly basis as a result. Plaintiff also understood the risks of Defendants' affirmative defenses and possible witness testimony that could have potentially undermined Plaintiff's claims. That these factual disputes would not be resolved until after protracted litigation and a trial at an indeterminable date in the future favored Plaintiff's decision to resolve this matter with a quick settlement payment following Court approval. Plaintiff also understood the effects of Covid-19 on the Defendants' business and was aware of Defendants' purported financial status, all of which again weighed in favor of early resolution and the certainty of payment through a Court-approved settlement.

### c. Defendants' Position

Defendants emphatically deny having violated the FLSA and New York State labor laws as alleged in the Complaint. The decision to settle this matter was based upon the fact that the cost of litigation, would far exceed the sum of the settlement. Defendants' business suffered greatly due to COVID-19. The business is trying to survive. Defendants simply do not have the financial resources to defend the action. Hence, the agreement to settle.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter for $45,000.00. The parties believe that this amount is reasonable considering Plaintiff's claims and the defenses maintained by Defendants in this matter and the fact that the terms of the Settlement Agreement were achieved following a court-annexed mediations before an experienced and qualified neutral. In fact, the agreed-upon settlement amount was based on a mediator's proposal made following at the end of the mediation.

The parties had genuine, bona fide disputes over the number of hours worked by Plaintiff, the wages paid to Plaintiff and the dates of Plaintiff's employment and whether the Plaintiff was exempt from overtime regulations, but both sides made compromises on their positions in order to achieve a fair and reasonable settlement.

### II.  The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 9 of the Settlement Agreement ("Release") is appropriately-limited to claims under the FLSA and NYLL and other related wage-and-hour claims that could have been asserted in this litigation. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims completely unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude the parties from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to the Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to the Plaintiff

The parties agreed to a global settlement of $45,000.00 to resolve all claims asserted in this action. If the Agreement is approved by the Court, Plaintiff will recover $29,419.34 after the below requested fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $871.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the costs of attempted service and effectual service of the Summons and Complaint on all Defendants in this matter and postage fees: $169.00
- the costs of Court-annexed mediation: $300.00

Plaintiff's counsel respectfully requests one-third of the settlement less their identifiable expenses ($44,129.00), or $14,709.66 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $15,580.66.

**Settlement Amount:** $45,000.00
**Attorneys' Expenses:** $871.00
**Settlement less Expenses:** $44,129.00 ($45,000.00 - $871.00)
**Requested Attorneys' Fees:** $14,709.66 ($44,129.00 / 3)
**Total payable to Attorneys:** $15,580.66 ($14,709.66 + $871.00)
**Total payable to Plaintiff:** $29,419.34 ($45,000.00 - $15,580.66)

Plaintiff's attorneys and the Plaintiff have a retainer agreement that is reduced to writing and are signed by the Plaintiff. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation and the recovery secured through their efforts. Plaintiff's counsel has

zealously advocated for their client throughout the litigation and mediation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

**IV.     Closing**

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of careful negotiation between experienced counsel with the assistance of an agreed-upon mediation from the Court-annexed mediation program and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement.

We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.